LOUISE O'CONNELL, EX'X. OF ESTATE
OF JOHN J. O'CONNELL
*vs.*
EDMUND W. HILL

Androscoggin.   Opinion, February 6, 1961.

*Alton Lessard,*
*Herbert Bennett,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.   John J. O'Connell was struck and killed by an automobile driven by the defendant. This action was brought by his executrix to recover damages under the

death statute. R. S., c. 165, §§ 9, 10. The decedent was survived by his widow and two adult sons.

The jury assessed damages for his death at $8,000 and for funeral expenses at $975. The case was tried in 1958 and is before us on motion for new trial under the rules then in force in which the defendant contends, first, that the decedent was negligent, and second, the damages for his death were excessive. The defendant properly agrees that negligence of the defendant was a question for the jury.

There is no disagreement on the applicable rules of law. We take the evidence with its reasonable inferences in the light most favorable to the plaintiff. Under the statute the decedent was presumed to have been in the exercise of due care and the burden of proof of contributory negligence rested upon the defendant. R. S., c. 113, § 50. We note that the statute was repealed in 1959, c. 317, § 176, and is now covered by Maine Rules of Civil Procedure 8(c). See also Field & McKusick, Maine Civil Practice, §§ 8.7 and 8.11.

In brief, the jury could have found as follows:

The decedent, a retired police captain of the City of Lewiston nearly 81 years of age, was a traffic officer employed by a contractor engaged in construction work on Route 202, a main highway leading from Winthrop to Lewiston. On October 15, 1957, at about 6:30 P.M. Daylight Saving Time, in clear and dry weather, the decedent, who had finished work for the day, was standing on the gravel shoulder on the right hand side of the highway as one travels from Winthrop southerly toward Lewiston opposite a roller. The "black top" highway was 24 feet in width. Oncoming traffic from the north was plainly visible for over 1,000 feet. A roller engaged in rolling the top surface upon the highway during the day was at the time of the accident in the southbound traffic lane. There was a single bright light on the north end of the roller.

The defendant traveling southerly from the direction of Winthrop turned right to avoid the roller, struck the front end of the roller damaging the left side of his car, and struck and killed the decedent. His car came to a stop between 60 to 70 feet from the roller, and the decedent was found about 15 feet from the front of the car. There was evidence that the defendant was traveling at about 50 miles per hour when first seen by the employee seated on the roller and that he reduced his speed prior to the accident.

There was evidence that a few minutes before the accident a driver proceeding southerly stopped to warn the decedent that he was in a dangerous position, that he should flash his light, and that the decedent replied in substance that his flashlight was worn out.

The hard core of defendant's argument on liability is that the decedent was negligent as a matter of law in standing on the gravel shoulder behind a wall of light. As we have seen, the defendant agrees that his actions presented a jury question on the issue of his negligence. Why, we may ask, was there not likewise a jury question of negligence on the part of the plaintiff?

The defendant urges that the case is analogous to *Binette, Admr.* v. *LePage,* 152 Me. 98, 123 A. (2nd) 771. There the decedent placed himself between the rear of a car and the rear of a wrecker on the wrecker's left side of a much-traveled highway in the evening. An oncoming car crashed into the wrecker and the decedent was killed. In overruling plaintiff's exceptions to a nonsuit, the court said, at p. 100:

> "The deceased was familiar with this highway and knew, or should have known, that the position he assumed, under the conditions which then existed, was extremely dangerous and hazardous."

The instant case may be readily distinguished from *Binette.* Here we have a person standing on the gravel

shoulder outside of the traffic lane with a roller carrying a light between himself and traffic approaching from the north.

We are unable to say that on all the evidence a jury could not reasonably find that the decedent was in the exercise of due care under the circumstances. Indeed, it may be more accurately stated that we cannot find that the defendant has sustained the burden of proof that the decedent was negligent. The jury verdict on liability stands.

On the issue of damages, we are convinced the jury erred. There is no question of the item for funeral expenses of $975. The difficulty comes with the $8,000 damages for the widow. The two adult sons did not seek damages.

The decedent at the time of his death was 80 years and 10 months of age, with a life expectancy of approximately six years. He was entitled as a retired police officer to an annual pension of $1,234.92. From 1953 it appears that his employment was intermittent and seasonal. During the two and one-half months preceding his death he earned between $500 and $600. There is no other evidence of earnings.

What then was the pecuniary loss from the widow from her husband's death? The jury of necessity was dealing with probabilities for the future and not evaluating known losses in the past. It surely would be reasonable to expect that the decedent's earnings would grow less and less and could not be counted upon to continue during his lifetime. Further, his wants, needs, and living expenses were a charge upon his income.

We cannot, nor do we, attempt to reach a mathematical nicety in establishing a pecuniary loss to the widow resulting from this unfortunate accident. We do no more than say that beyond a given sum damages would be unreasonable and not justified. We place this amount at $5,000.

The entry will be

> *Motion for new trial sustained unless within thirty days from filing of mandate plaintiff remits all of verdict in excess of $5,975.*